FILED

02 MAY 14 PM 4: 25

THOMAS J. MACKIN, CLERK
U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT
ILLINOIS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: ) | |
| ) | |
| CHEMETCO, INC., ) | |
| ) | |
| Debtor, ) | Case No.: 01-34066 |
| ) | |
| THE CIT GROUP/EQUIPMENT ) | Chapter 7 |
| FINANCING, INC. ) | |
| ) | THE CIT GROUP/EQUIPMENT |
| Movant ) | FINANCING, INC.'S MOTION |
| ) | FOR RELIEF FROM THE |
| v. ) | AUTOMATIC STAY |
| ) | |
| CHEMETCO, INC. ) | |
| ) | Spencer P. Desai, #6210319 |
| and ) | 100 South Fourth Street, Suite 1100 |
| ) | St. Louis, Missouri 63102 |
| LAURA K. GRANDY, ) | |
| ) | |
| Trustee, ) | |
| Respondents. ) | |

### THE CIT GROUP/EQUIPMENT FINANCING, INC. 'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW The CIT Group/Equipment Financing, Inc. ("Movant"), by and through the undersigned counsel, and for its Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. §362(d)(1), and (2) states to the Court as follows:

### General Allegations

1. Chemetco, Inc. ("Debtor") is the Debtor in the above-captioned case filed on November 13, 2001.

2. Movant is a lessor of the Debtor and brings this Motion pursuant to 11 U.S.C. §361(d)(1) & §362(d)(1) and (2).

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(2)(h) and §1334. This is a core proceeding.

4. Venue is proper before the United States Bankruptcy Court for the Southern District of Illinois pursuant to 28 U.S.C. §1409.

### July 21, 1999 Lease

5. On July 21, 1999, Debtor executed a Lease Agreement ("Lease") with Thermo Capital Company LLC for the purchase of an IRIS Advantage ICAP Spectograph from Thermo Jarrell Ash. The Lease called for 36 monthly payments of $2,559.52 beginning October 21, 1999. Movant is the successor in interest to Thermo Capital Company LLC. A copy of the Lease Agreement and the UCC-1 Financing Statement are attached hereto as Exhibits A and B, respectfully, and are incorporated herein as if more fully set forth.

6. The Movant has not received a payment since October 11, 2001 and Debtor is past due for the months of October 2001 through May 2002. Debtor is in default under the terms of the Lease Agreement.

7. As of April 24, 2002, the outstanding receivable balance due and owing under the Lease Agreement is $30,995.25, including taxes in the amount of $1,325.60 and late charges at 7.00% in the amount of $2,670.40. Additionally, there is due and owing under the Lease Agreement all applicable charges, including late fees, repossession fees and storage fees

8. Debtor has not provided proof of current insurance on the equipment. This is also an event of default under the Lease Agreement.

9. As a result of Debtor's failure to make payments on the Lease and to insure the Equipment, Movant is not adequately protected and its collateral is in jeopardy.

10. Further, additional sums are accruing each day under the Lease Agreement, which sums include interest, late charges, attorneys fees and expenses related to Movant's Motion for Relief From Automatic Stay and related to the protection of Movant's interest in the collateral, in sums as yet unknown, and other sums of money which may from time to time be advanced by Movant for the purpose of inspecting and protecting the collateral.

11. The automatic stay provided by 11 U.S.C. §362 should be terminated and/or modified since Movant lacks adequate protection in the property by reason of the following:

    a. The Equipment is diminishing in value and its value is below the balance due Movant at this time;

    b. Debtor has failed to maintain insurance as required under the terms of the Lease Agreement;

    c. Debtor has filed under Chapter 7 and can no longer operate without an order of this Court;

    d. Debtor has no equity in the property and the property is not necessary to an effective reorganization.

WHEREFORE, Movant prays this Court make and enter its Order:

    a. Finding Movant is not adequately protected with regard to Debtor, granting Movant relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2), permitting Movant to exercise its remedies under state law, including repossession and sale of the leased IRIS Advantage ICAP Spectograph;

    b. Ordering the estate's interest in the afore-mentioned property be abandoned by the Trustee; and

    c. for such other and further relief as this Court deems just and proper.

Respectfully submitted,

POLSINELLI SHALTON & WELTE
A PROFESSIONAL CORPORATION


By: _____
SPENCER P. DESAI (#6210319)
SHERRY K. DREISEWERD (#6272158)
100 South Fourth Street, Suite 1100
St. Louis, Missouri 63102
(314) 231-1950
Fax No. (314) 231-1776
ATTORNEYS FOR MOVANT
THE CIT GROUP/EQUIPMENT FINANCING, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing pleading was served by U.S. Mail, postage prepaid this 14 day of May, 2002, to:

Office of the U.S. Trustee
Becker Bldg., Room 1100
401 Main Street
Peoria, IL 61602

Ms. Laura K. Grandy
720 W. Main Street, Suite 100
Belleville, IL 62220

Chemetco, Inc.
3576 Chemetco Lane
Hartford, IL 62048

Ms. Teresa A. Generous
10 S. Broadway
St. Louis, MO 63102-1774

Ms. Penni S. Livingston
6001 Old Collinsville Road
Fairview Heights, IL 62208

_____
Rebecca M. O'Brien

NEW / NEW
SPDES 191089

4

# LEASE AGREEMENT

**TO OUR VALUED CUSTOMER:** This Lease has been written in "Plain English". When we use the words *you* and *your* in this Lease, we mean you, our customer, which is the Lessee indicated below. When we use the words *we, us,* and *our* in this Lease, we mean the *Lessor, Thermo Capital Company LLC*. Our address is 245 Winter Street, Suite 300; Waltham, MA 02451.

| CUSTOMER INFORMATION | Lessee Name: Chemetco, Inc. | | Approval # |
|---|---|---|---|
| | Billing Street Address/City/County/State/Zip: 3576 Chemetco Lane; Hartford, IL 62048 | | Lease # 800-000110-000 |
| | Equipment Location (if different from above) | Lessee Phone # (618) 254-4381 | Customer # 100021252 |
| | | | Tax ID # 37-0914097 |

| SUPPLIER INFORMATION | Supplier Name: Thermo Jarrell Ash ("SUPPLIER") | |
|---|---|---|
| | Street Address/City/County/State/Zip: 27 Forge Parkway; Franklin, MA 02038-3148 | Supplier Phone # (508) 520-1880 |

| EQUIPMENT DESCRIPTION | Quantity | Make/Model | Serial Number |
|---|---|---|---|
| | (1) | IRIS Advantage ICAP Spectrograph | |

| END OF LEASE PURCHASE OPTION | Check one applicable box. If no box is checked or if more than one box is checked, the Fair Market Value Purchase Option will apply. <br> ☒ Fair Market Value Purchase Option     ☐ Fixed Price Purchase Option of $ <br> ☐ Fixed Price Purchase Option of ___% of the Total Cash Price | PLUS APPLICABLE TAXES |
|---|---|---|

| TERM AND LEASE PAYMENT SCHEDULE | Initial Lease Term (Months) 36 | Lease Payment $2,559.52 | You agree to pay at the time you sign this Lease: <br> A) Total Advance Lease Payment: 1st (Mos.)   = $ 2,559.52 <br> B) Sales/Use Tax on Advance Lease Payment   = $ Included <br> C) One-time Documentation Fee   = $ 100.00 <br> D) Total of A + B + C   = $ 2,659.52 <br> If more than one Lease Payment is required in advance, the additional amount will be applied at the end of the initial or any renewal term. | PLUS APPLICABLE TAXES |
|---|---|---|---|---|
| | Additional Provisions | | | |

| INSURANCE & TAXES | You are required to provide and maintain insurance related to the Equipment, and to pay any property, use, and other taxes related to this Lease or the Equipment. (See Sections 4 and 6 on the second page of this Lease.) If you are tax-exempt, you agree to furnish us with satisfactory evidence of your exemption. |
|---|---|

## TERMS AND CONDITIONS

**BY SIGNING THIS LEASE:** (i) YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS OF THIS LEASE; (ii) YOU AGREE THAT THIS LEASE IS A NET LEASE THAT YOU CANNOT TERMINATE OR CANCEL, YOU HAVE AN UNCONDITIONAL OBLIGATION TO MAKE ALL PAYMENTS DUE UNDER THIS LEASE, AND YOU CANNOT WITHHOLD, SET OFF OR REDUCE SUCH PAYMENTS FOR ANY REASON; (iii) YOU WILL USE THE EQUIPMENT ONLY FOR BUSINESS PURPOSES; (iv) YOU WARRANT THAT THE PERSON SIGNING THIS LEASE FOR YOU HAS THE AUTHORITY TO DO SO AND TO GRANT THE POWER OF ATTORNEY SET FORTH IN SECTION 7 OF THIS LEASE; (v) YOU CONFIRM THAT YOU DECIDED TO ENTER INTO THIS LEASE RATHER THAN PURCHASE THE EQUIPMENT FOR THE TOTAL CASH PRICE; AND (vi) YOU AGREE THAT THIS LEASE WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS AND YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN MASSACHUSETTS. YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY.

**1. LEASE; DELIVERY AND ACCEPTANCE.** You agree to lease the equipment described on the first page of this lease agreement (collectively "Equipment") on the terms and conditions shown on pages one through four of this lease ("Lease"). If you have entered into any purchase or supply contract ("Supply Contract") with any Supplier, you assign to us your rights under such Supply Contract, but none of your obligations (other than the obligation to pay for the Equipment if it is accepted by you as stated below and you timely deliver to us such documents and assurances as we request). If you have not entered into a Supply Contract, you authorize us to enter into a Supply Contract on your behalf. You will arrange for the delivery of the Equipment to you. When you receive the Equipment, you agree to inspect it to determine if it is in good working order. This Lease will begin on the date when the Equipment is

---

I have received and reviewed this page and I certify that each of the provisions set forth above is clear and legible. ___ (Lessee's Initials)

EXHIBIT A

delivered to you and the Equipment will be deemed irrevocably accepted by you upon the earlier of: a) the delivery to us of a signed Delivery and Acceptance Certificate (if requested by us); or b) 10 days after delivery of the Equipment to you if previously you have not given written notice to us of your non-acceptance. The first Lease Payment is due on or before the date the Equipment is delivered to you. The remaining Lease Payments will be due on the day of each subsequent month (or such other time period specified on the first page of this Lease) designated by us. You will make all payments required under this Lease to us at such address as we may specify in writing. You authorize us to adjust the Lease Payment by not more than 15% if the actual Total Cash Price (which is all amounts we have paid in connection with the purchase, delivery and installation of the Equipment, including any trade-up and buyout amounts) differs from the estimated Total Cash Price. If any Lease Payment or other amount payable to us is not paid within 10 days of its due date, you will pay us a late charge not to exceed 7% of each late payment (or such lesser rate as is the maximum rate allowable under applicable law).

2. **NO WARRANTIES.** We are leasing the Equipment to you "AS-IS". YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE THE EQUIPMENT, WE DO NOT REPRESENT THE MANUFACTURER OR THE SUPPLIER, AND YOU HAVE SELECTED THE EQUIPMENT AND SUPPLIER BASED UPON YOUR OWN JUDGMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE. YOU AGREE THAT REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT. YOU AGREE THAT NEITHER SUPPLIER NOR ANY SALESPERSON, EMPLOYEE OR AGENT OF SUPPLIER IS OUR AGENT OR HAS ANY AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY WAY. We transfer to you for the term of this Lease any warranties made by the manufacturer or Supplier under a Supply Contract.

3. **EQUIPMENT LOCATION; USE AND REPAIR; RETURN.** You will keep and use the Equipment only at the Equipment Location shown on the first page of this Lease. You may not move the Equipment without our prior written consent. At your own cost and expense, you will keep the Equipment eligible for any manufacturer's certification, in compliance with all applicable laws and in good condition, except for ordinary wear and tear. You will not make any alterations, additions or replacements to the Equipment without our prior written consent. All alterations, additions and replacements will become part of the Equipment and our property at no cost or expense to us. We may inspect the Equipment at any reasonable time. Unless you purchase the Equipment in accordance with this Lease, within 10 days of the expiration or earlier termination of this Lease you will immediately deliver the Equipment to us in good condition and repair, except for ordinary wear and tear, to any place in the United States that we tell you, and upon our request, you will provide us with a certification from the manufacturer or its authorized representative as to the Equipment's condition. You will pay all expenses of deinstalling, crating and shipping, and you will insure the Equipment for its full replacement value during shipping.

4. **TAXES AND FEES.** You will pay when due, either directly or to us upon our demand, all taxes, fines and penalties relating to this Lease or the Equipment that are now or in the future assessed or levied by any state, local or other government authority. We or our affiliate will file all personal property, use or other tax returns (unless we notify you otherwise in writing) and you agree to pay us or our affiliate a fee for making such filings. We do not have to contest any taxes, fines or penalties. You will pay estimated property taxes with each Lease Payment or annually, as invoiced.

5. **LOSS OR DAMAGE.** As between you and us, you are responsible for any loss, theft or destruction of, or damage to, the Equipment (collectively "Loss") from any cause at all, whether or not insured, from the time the Equipment is shipped by or from the Supplier to you to the time the Equipment is delivered to us at the end of this Lease. In the event of any Loss prior to the delivery of the Equipment to you and your acceptance of the Equipment as contemplated by Section 1 above, you agree that we have no obligation to purchase the Equipment from the Supplier or make any other payments to Supplier with respect to the Equipment and you shall be solely responsible for making any such payments to the Supplier. You agree that you will insure the Equipment during shipping from the Supplier to you for not less than its full replacement value, which insurance shall name us as loss payee. If any Loss should occur following the delivery of the Equipment to you and your acceptance of the Equipment as contemplated by Section 1 above, you are still required to make all Lease Payments payable under this Lease notwithstanding such Loss. You must notify us immediately of any Loss. If the Loss has occurred after the Equipment has been delivered to and accepted by you as contemplated by Section 1 above, then, at our option, you will either (a) repair the Equipment so that it is in good condition and working order, eligible for any manufacturer's certification, or (b) pay us the amounts specified in Section 9(b) below.

6. **INSURANCE.** You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value, naming us as loss payee, and (b) public liability and third party property insurance, naming us as an additional insured. You will give us certificates or other evidence of such insurance when requested. Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance. If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering our interest in the Equipment for the term of this Lease, including any renewal or extensions, from an insurer of our choice, including an insurer that is our affiliate. We may add the costs of acquiring and maintaining such insurance, and our or our affiliate's fees for our or our affiliate's services in placing and maintaining such insurance (collectively, "Insurance Charge") to the amounts due from you under this Lease. You will pay the Insurance Charge in equal installments allocated to the remaining Lease Payments. If we purchase insurance, you will cooperate with our insurance agent with respect to the placement of insurance and the processing of claims. Nothing in this Lease will create an insurance relationship of any type between us and any other person. You acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange. If we replace or renew any insurance coverage, we are not obligated to provide replacement or renewal coverage under the same terms, costs, limits, or conditions as the previous coverage.

7. **TITLE; RECORDING.** We are the owner of and will hold title to the Equipment. You will keep the Equipment free of all liens and encumbrances. Unless the Purchase Option price shown on the first page of this Lease is $1.00, you agree that this transaction is a true lease. However, if this transaction is deemed to be a lease intended for security, you grant us a purchase money security interest in the Equipment (including any replacements, substitutions, additions, attachments and proceeds). You will deliver to us signed

_____
I have received and reviewed this page and I certify that each of the provisions set forth above is clear and legible. _____ (Lessee's Initials)

financing statements or other documents we request to protect our interest in the Equipment. YOU AUTHORIZE US TO FILE A COPY OF THIS LEASE AS A FINANCING STATEMENT AND APPOINT US OR OUR DESIGNEE AS YOUR ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON YOUR BEHALF, FINANCING STATEMENTS COVERING THE EQUIPMENT.

**8. DEFAULT.** Each of the following is a "Default" under this Lease: (a) you fail to pay any Lease Payment or any other payment within 10 days of its due date, (b) you do not perform any of your other obligations under this Lease or in any other agreement with us or with any of our affiliates and this failure continues for 10 days after we have notified you of it, (c) you become insolvent, you dissolve or are dissolved, or you assign your assets for the benefit of your creditors, or enter (voluntarily or involuntarily) any bankruptcy or reorganization proceeding; (d) any guarantor of this Lease dies, does not perform its obligations under the guaranty, or becomes subject to one of the events listed in clause (c) above.

**9. REMEDIES.** If a Default occurs, we may do one or more of the following: (a) we may cancel or terminate this Lease or any or all other agreements that we have entered into with you; (b) we may require you to immediately pay us, as compensation for loss of our bargain and not as a penalty, a sum equal to (i) the present value of all unpaid Lease Payments for the remainder of the term plus the present value of our anticipated residual interest in the Equipment, each discounted at 5% per year, compounded monthly, plus (ii) all other amounts due or that become due under this Lease; (c) we may require you to deliver the Equipment to us as set forth in Section 3; (d) we or our agent may peacefully repossess the Equipment without court order and you will not make any claims against us for damages or trespass or any other reason; and (e) we may exercise any other right or remedy available at law or in equity. You agree to pay all of our costs of enforcing our rights against you, including reasonable attorneys' fees. If we take possession of the Equipment, we may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Equipment) to the amounts that you owe us. You agree that if notice of sale is required by law to be given, 10 days' notice shall constitute reasonable notice. You will remain responsible for any amounts that are due after we have applied such net proceeds.

**10. FINANCE LEASE STATUS.** You agree that if Article 2A-Leases of the Uniform Commercial Code applies to this Lease, this Lease will be considered a "finance lease" as that term is defined in Article 2A. By signing this Lease, you agree that either (a) you have reviewed, approved, and received, a copy of the Supply Contract or (b) that we have informed you of the identity of the Supplier, that you may have rights under the Supply Contract, and that you may contact the Supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

**11. ASSIGNMENT.** YOU MAY NOT ASSIGN, SELL, TRANSFER OR SUBLEASE THE EQUIPMENT OR YOUR INTEREST IN THIS LEASE. We may, without notifying you, sell, assign, or transfer this Lease and our rights to the Equipment. You agree that the new owner will have the same rights and benefits that we have now under this Lease but not our obligations. The rights of the new owner will not be subject to any claim, defense or set-off that you may have against us.

**12. PURCHASE OPTION; AUTOMATIC RENEWAL.** If no Default exists under this Lease, you will have the option at the end of the initial or any renewal term to purchase all (but not less than all) of the Equipment at the Purchase Option price shown on the first page of this Lease, plus any applicable taxes. Unless the Purchase Option price is $1.00, you must give us at least 60 days written notice before the end of the initial lease term that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of this Lease, this Lease will automatically renew for an additional 12 month term and thereafter renew for successive one month terms until you deliver the Equipment to us. During such renewal(s) the Lease Payment will remain the same. We may cancel an automatic renewal term by sending you written notice 10 days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's in use and in place fair market value. If you do not agree with our determination of the Equipment's fair market value, the fair market value (in use and in place) will be determined at your expense by an independent appraiser selected by us. Upon payment of the Purchase Option price, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty whatsoever and this Lease will terminate.

**13. INDEMNIFICATION.** You are responsible for any losses, damages, penalties, claims, suits and actions (collectively "Claims"), whether based on a theory of strict liability or otherwise caused by or related to (a) the manufacture, installation, ownership, use, lease, possession, or delivery of the Equipment or (b) any defects in the Equipment. You agree to reimburse us for and if we request, to defend us against, any Claims.

**14. CREDIT INFORMATION.** YOU AUTHORIZE US OR ANY OF OUR AFFILIATES TO OBTAIN CREDIT BUREAU REPORTS, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE NECESSARY. ON YOUR WRITTEN REQUEST, WE WILL INFORM YOU WHETHER WE HAVE REQUESTED A CONSUMER CREDIT REPORT AND THE NAME AND ADDRESS OF ANY CONSUMER CREDIT REPORTING AGENCY THAT FURNISHED A REPORT. YOU ACKNOWLEDGE THAT WITHOUT FURTHER NOTICE WE MAY USE OR REQUEST ADDITIONAL CREDIT BUREAU REPORTS TO UPDATE OUR INFORMATION SO LONG AS YOUR OBLIGATIONS TO US ARE OUTSTANDING.

**15. MISCELLANEOUS.** You agree that the terms and conditions contained in this Lease make up the entire agreement between you and us regarding the lease of the Equipment. This Lease is not binding on us until we sign it. Any change in any of the terms and conditions of this Lease must be in writing and signed by us. You agree, however, that we are authorized, without notice to you, to supply missing information or correct obvious errors in this Lease. If we delay or fail to enforce any of our rights under this Lease, we will still be entitled to enforce those rights at a later time. All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail, addressed to the party receiving the notice at its address shown on the first page of this Lease (or to any other address specified by that party in writing) with postage prepaid. All of our rights and indemnities will survive the termination of this Lease. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law, and any such excess payment will be applied to Lease Payments in inverse order of maturity, and any remaining excess will be refunded to

I have received and reviewed this page and I certify that each of the provisions set forth above is clear and legible. _____ (Lessee's Initials)

you. If you do not perform any of your obligations under this Lease, we have the right, but not the obligation, to take any action or pay any amounts that we believe are necessary to protect our interests. You agree to reimburse us immediately upon our demand for any such amounts that we pay. If more than one Lessee has signed this Lease, each of you agrees that your liability is joint and several.

**Thermo Capital Company LLC, LESSOR**

X _[signature]_
Authorized Signature

Susan Darcy / 10/20/99
Print Name & Title / Date

SR Rpr Mgr

**LESSEE Chemetco, Inc.**

X _Bill Cassidy_
Authorized Signature

BILL CASSIDAY / 7/27/99
Print Name & Title / Date

CONTROLLER

---

I have received and reviewed this page and I certify that each of the provisions set forth above is clear and legible. _____ (Lessee's Initials)

# DELIVERY AND ACCEPTANCE CERTIFICATE

**By signing this Certificate, you, the Lessee identified below, agree:**

A) That all equipment described in the lease or rental agreement identified below ("Equipment") has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the lease or rental agreement;

B) That we, Thermo Capital Company LLC, are authorized to purchase the Equipment and start billing you under the lease or rental agreement;

C) That if you have signed and transmitted this Certificate to us by facsimile transmission, the facsimile copy of this Certificate as received by us shall be binding on you as if it were manually signed by you; and

D) THAT YOU HAVE RECEIVED AND REVIEWED THIS CERTIFICATE AND THAT ALL OF THE PROVISIONS CONTAINED HEREIN ARE CLEAR AND LEGIBLE.

| Lease or Rental Agreement Number  800-000025-001 | Customer Number |
|---|---|
| Lessee Name  Chemetco, Inc. | |
| Authorized Signature  X  *Bill Casselly* | |
| Title  CONTROLLER | Date  10/18/99 |

## Office of the Secretary of State

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "NEWCOURT FINANCIAL USA INC.", CHANGING ITS NAME FROM "NEWCOURT FINANCIAL USA INC." TO "the CitGroup Equipment Financing, Inc." ~~"CIT FINANCIAL USA, INC."~~, FILED IN THIS OFFICE ON THE THIRTY-FIRST DAY OF MAY, A.D. 2000, AT 4:30 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

2284509  8100

001278034

AUTHENTICATION: 0473073

DATE: 06-01-00

06/14/00  WED 18:47  [TX/RX NO 5967]

# CERTIFICATE OF AMENDMENT
# OF
# CERTIFICATE OF INCORPORATION
# OF
# NEWCOURT FINANCIAL USA INC.

Adopted in accordance with the provisions of Section
242 of the General Corporation Law of the State of Delaware

The undersigned, being the President of Newcourt Financial USA Inc., a corporation organized and existing under the General Corporation Law of the State of Delaware (the "Corporation") DOES HEREBY CERTIFY AS TRUE THE FOLLOWING:

FIRST. That the Board of Directors of the Corporation consented to the adoption of the following resolution setting forth a proposed amendment to Article I of the Certificate of Incorporation of the Corporation:

RESOLVED: that the Board of Directors hereby declares it advisable and in the best interest of the Corporation that Article I of the Certificate of Incorporation be amended to read in its entirety as follows:

"Article I. The name of the corporation is ~~CIT Financial USA, Inc.~~ The CIT Group Equipment Financing, Inc."

SECOND. That the aforesaid amendment has been duly consented to and authorized by the sole holder of all the issued and outstanding stock of the Corporation entitled to vote by written consent given in accordance with the applicable provisions of Section 228 of the General Corporation Law of the State of Delaware and Article IX of the Certification of Incorporation of the Corporation.

THIRD. That the aforesaid amendment was duly adopted in accordance with the applicable provisions of Section 242 of the General Corporation Law of the State of Delaware

FOURTH: That the Certificate of Amendment to the Certificate of Incorporation shall be effective at 12:01 a.m. on May 31, 2000.

IN WITNESS WHEREOF, this Certificate of Amendment has been made under seal of the Corporation and has been signed by the undersigned, Bradley D. Nullmeyer, President and attested by Robert J. McCarthy, Senior Vice President, General Counsel and Secretary of the Corporation, on this 1st day of May, 2000.

By: _____
Bradley D. Nullmeyer,
President

Attested by:

_____
Robert J. McCarthy,
Senior Vice President, General
Counsel and Secretary

06/14/00  WED 15:47  [TX/RX NO 5867]

*Thermo*

This STATEMENT is presented to a filing of    for filing pursuant to the Uniform Commercial Code.
Lessee(s)(Last Name First) and address(es):    Lessor(ies) and address(es):
Chemetco Inc.    Newcourt Financial USA Inc.

3576 Chemetco Lane    997 Lenox Drive, Suite 112
Hartford, IL 62048    Lawrenceville, NJ 08648

For Filing Officer
(Date, Time, Number, and Filing)

ILUC 08/05/99 07:59:03
20.00 CKM
30311 19:38 4076250 FS

ASSIGNEE OF LESSOR

93513 NEWCOURT.USA
1963406-41-1

1. This financing statement covers the following types (or items) of property:

TJA IRIS Advantage ICAP Spectrograph. Lease No. 80000025001

2. ☐ Products of Collateral are also covered.

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.
The Lessor certifies that the Lessor no longer claims a security interest under the financing statement bearing the file number shown above.

RETURN ACK. TO:
DATA FILING SERVICES, INC.
P.O. BOX 29071
GLENDALE, CA 91209-9071 .

Date _____ 19 ___    By: _____

Filed With:    Illinois

(Signature of Lessor or Assignee of Record. Not valid until signed)

**EXHIBIT B**