**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In Re: | ) IN CHAPTER 7 PROCEEDINGS |
| | ) |
| CHEMETCO INC., | ) BK 01-34066 |
| | ) |
| Debtor. | ) |

**APPLICATION TO APPROVE AGREEMENT FOR FUNDING FOR ACQUISITION OF EQUIPMENT AND HARVESTING OF METAL BEARING MATERIAL FROM THE CHEMETCO SITE**

TO:     HON. WILLIAM V. ALTENBERGER, U. S. Bankruptcy Judge

Comes now Donald M. Samson, trustee, in the above-referenced bankruptcy proceeding and files this Application to Approve Agreement for Funding for Acquisition of Equipment and Harvesting of Metal Bearing Material from the Chemetco Site and shows as follows:

1. That Donald M. Samson is the duly appointed and acting successor trustee to Laura K. Grandy, trustee.

2. Donald M. Samson, as trustee has acknowledged the terms of an Agreement (The Letter Agreement) between John H. Harvison, (hereinafter Lender), and Diversified Minerals of Texas, LLC (hereinafter Diversified) which provides as follows:

   a) Diversified (as successor assignee of Diversified Minerals & Recovery, LLC, and Paradigm Minerals & Environmental Services, LLC) holds the rights to acquire the assets at the Chemetco site including the land, slag pile/metal bearing material and equipment along with the rights to process/recover and sell the mineral/metal bearing material in accordance with the Asset Purchase and Processing Agreement as Amended (APPA) and the Consent Decree dated September 13, 2013, as Amended (the C.D.).

   b) Lender has agreed to provide $3 million to fund the recovery, processing and sale of slag/metal bearing material (the Project) from the Chemetco site.

   c) The funding will be in two phases, (and evidenced by two separate promissory notes, as set forth in, attached to and made a part of The Letter Agreement), as follows:

   i) The initial $1.2 million loan has been forwarded to Diversified to be used in accordance with the Use of Initial Funds Sheet, attached to and made a part of The Letter Agreement, and repaid in twenty-four (24) equal monthly payments at 10% interest from proceeds of the sale of metal bearing material prior to any monthly distribution pursuant to the APPA. As additional consideration for the initial $1.2 million loan Lender shall receive a security interest in the equipment purchased with the initial funding, a security interest in 51% of Diversified Minerals & Recovery LLC, and a 40% equity interest in Diversified.

        **ii)** Within seven (7) days of Bankruptcy Court approval, Lender will advance an additional $1.8 million loan to be used in accordance with the list of Uses of Final Funds attached to The Letter Agreement to be repaid in twenty-four (24) equal monthly payments at 10% interest from the sale of metal bearing material prior to any monthly distribution pursuant to the APPA.  As additional consideration for the $3 million loan, Lender shall receive a security interest in all equipment purchased with the final funding proceeds, a second lien, subject to the lien of Commerce Bank on the slag pile and a first mortgage on the 209 acres of land surrounding the Chemetco site.

        **iii)** The first payment on the initial loan and final loan shall be due the earlier of a) forty-five (45) days after processing commences with the new equipment funded by the Loans or b) six (6) months after the first advance pursuant to the initial loan.

3. Conditions precedent to the final loan are:
   - **a)** Lender's due diligence
   - **b)** Amendment to the APPA which establishes a reconciliation of payments to Diversified by Chemetco and simplifies the formula for distribution of revenues from the sales of metal bearing materials at the Chemetco site.
   - **c)** Extension of the C.D. up to and including March 31, 2025
   - **d)** Any necessary approvals by the U.S.E.P.A. and the Illinois E.P.A.

4. This Application provides a general description of the major provisions of The Letter Agreement.  Any inconsistencies between this Application and the actual terms of The Letter Agreement will be controlled by The Letter Agreement, and The Letter Agreement shall set forth the obligations of Lender, Diversified, and the Trustee for the Bankruptcy Estate of Chemetco.  A copy of The Letter Agreement has been filed with the Court.

5. The Letter Agreement is subject to approval by the Bankruptcy Court.

**WHEREFORE** Donald M. Samson, trustee, prays that the Application to Approve Agreement for Funding for Acquisition of Equipment and Harvesting of Metal Bearing Material from the Chemetco Site be granted and for such further relief as this Court deems just and equitable.

DATE: 12/28/18

    /s/ Donald M, Samson_____
DONALD M. SAMSON, Trustee
226 West Main Street, Suite 102
Belleville, IL  62220
618-235-2226

December 21, 2018

Mr. Elliott G. Stegin
Chairman/Member
Diversified Minerals of Texas LLC

Re: Funding for Acquisition of Equipment and
Harvesting of Metal Bearing Material from the
Chemetco Site in Hartford, Illinois

Dear Mr. Stegin:

This Letter Agreement ("Agreement") is confidential and sets forth the terms and conditions whereby I, personally, or my designee ("Lender"), shall loan $3 Million (the "Loan") to Diversified Minerals of Texas LLC (a Texas limited liability company) ("Diversified"), to complete the acquisition of equipment for, and the construction of, the processing plant (the "Project") to recover, process, and sell the slag/metal bearing material at the Chemetco site ("Chemetco Site") in Hartford, Illinois. Hereinafter the Lender and Diversified shall be jointly referred to as the "Parties" or individually, a "Party."

1. **Borrowing Entity:** Diversified, as assignee from Diversified Minerals & Recovery LLC, an Illinois limited liability company ("Diversified Illinois"), holding all rights to acquire the assets at the Chemetco Site, including the land, the slag pile/metal bearing material, and all existing equipment, along with the rights to process/recover all valuable minerals/metal bearing material therefrom in accordance with its Asset Purchase & Processing Agreement (as amended) ("APPA") and the Consent Decree dated September 13, 2013 (as amended), including all related documents, approvals and amendments thereto (the "CD").

2. **Commitment:** $3 Million to fund all approved Use of Initial Funds and Use of Final Funds (as set forth in the attached).

3. **Funding:** Lender agrees to a two phase funding schedule (each of which is a separate and independent obligation), subject to the other terms and conditions hereof:

   **A. $1.2 Million Initial Funding:** Lender shall advance $1.2 Million (the "Initial Funding") upon receipt of a fully-executed copy of this Agreement, to be used for the Project in accordance with the attached Use of Initial Funds. As consideration for this Initial Funding, Lender shall receive:

   **(1) Initial Promissory Note:** Repayment in accordance with a mutually agreeable promissory note (the "Initial Promissory Note") which provides for the outstanding amounts to accrue interest at the rate of ten percent (10%) per annum with all amounts due and payable within two (2) years. Said payments to be made out of the sales proceeds from the Project, with Donald Samson, the Chemetco Estate Trustee (the "Trustee"), to pay such amounts "off the top" and before any distributions under the APPA or otherwise (*Please note that the Trustee must obtain Bankruptcy Court approval for the payment of the Initial Promissory Note from gross sales proceeds, and will seek such approval. Until such Bankruptcy Court approval is

obtained, Diversified shall honor the priority payments due to Lender. Diversified Illinois and the Trustee shall continue to honor the irrevocable attorney's lien in place in favor of Bryan Cave Leighton Paisner LLP).

**(2) Equity Interest in Diversified:** Lender shall own a forty percent (40%) equity/membership interest in Diversified (with Diversified Illinois holding 60%).

**(3) Collateral Interest:** Upon closing, in the event Lender has not elected to purchase the equipment directly, and until such time as Lender has been paid in full, Lender shall have a first lien on all equipment purchased with proceeds from the Initial Funding. The documents evidencing this security interest shall be in the form agreed upon by the Parties prior to execution of the Agreement. In addition, Lender shall receive an assignment of fifty-one percent (51%) membership interest in Diversified Illinois, which shall be released by Lender upon U.S. Bankruptcy Court approval of the Final Funding (and receipt of the additional collateral/security interests discussed below in connection with the Final Funding).

**B. $1.8 Million ("Final Funding"):** Lender shall advance an additional $1.8 Million within 7 days of Bankruptcy Court approval of the provisions of this Agreement requiring participation by the Trustee (for a total funding of $3 Million; collectively, the Initial Funding and the Final Funding are the "Loan") to be used for the Project as set forth in the attached Use of Final Funds, including equipment purchases, immediate needs, operating the plant, and harvesting the metal bearing material. Except as expressly set forth in the Use of Funds, none of the Loan proceeds shall be used for payment of any debt of Diversified Illinois which predates this Agreement. If Bankruptcy Court approval is not obtained within sixty days of the date of this Agreement, or if any other condition precedent set forth in Section 4 below is not satisfied or waived, Lender shall not be obligated to advance the Final Funding, but shall retain its ownership in Diversified and first lien on all equipment purchased with proceeds from the Initial Funding. As consideration for this Final Funding, Lender shall receive:

**(1) Final Promissory Note:** Repayment in accordance with a mutually agreeable second promissory note (the "Final Promissory Note") which provides for the outstanding amounts to accrue interest at the rate of ten percent (10%) per annum with all amounts due and payable within two (2) years. Said payments to be made out of the sales proceeds from the Project, with Donald Samson, the Chemetco Estate Trustee (the "Trustee"), to pay such amounts "off the top" and before any distributions under the APPA or otherwise.

**(2) Collateral Interests:** Upon closing and until such time as Lender has been paid in full, Lender shall have: (a) a first lien on all equipment purchased with proceeds from the Loan, (b) second lien on the slag pile located at the Chemetco Site, and (c) a first mortgage on the +/- 209 acres of land surrounding the Chemetco Site (with all such security interests to secure the entire loan, including relating back and to the repayment of the Initial Promissory Note). Further, in event that Lender chooses to take an assignment of the existing loan payable to and proof of claim held by Commerce Bank, Lender shall succeed to a first lien position on the slag pile. The documents evidencing these security interests shall be in a mutually agreeable form.

(3) **Additional Repayment Terms:** The "first payment," by the Trustee or Diversified, as the case may be, to Lender under the Initial Promissory Note Loan shall be due and payable on or before the earlier of: (a) forty-five days after processing begins with the new equipment funded by the Initial Funding, or (b) six months after the first advance under the Initial Funding.

The "first payment," by the Trustee or Diversified, as the case may be, to Lender under the Final Promissory Note Loan shall be due and payable on or before the earlier of: (a) forty-five days after processing begins with the new equipment funded by the Final Funding, or (b) six months after the first advance under the Final Funding.

Each Note shall be due and payable as follows: i) interest shall begin running from the date funds are advanced; ii) principal shall be due and payable monthly commencing with the first payment in an amount equal to $1/24^{th}$ of the Initial Funding amount and $1/24^{th}$ of the Final Funding amount, respectively, and iii) accrued interest on all amounts advanced, also payable monthly at the same time, provided that each Note is payable in full no later than two (2) years from the first payment under such Note. Past due principal and interest shall bear interest after the due date until paid at the Maximum Rate. "Maximum Rate" shall mean 18%, or the maximum rate of interest which may be charged on the Loan under applicable law, whichever is less. Diversified shall have the right of pre-payment upon mutually agreeable terms.

4.  **Conditions Precedent:** Funding of the Initial Funding shall be subject to receipt of a fully executed Agreement. Funding of the Final Funding shall be subject to and only take place after each and every of the conditions below are satisfied or waived by Lender, in Lender's sole, absolute and unfettered discretion:

A. **Lender's Due Diligence:** Lender shall be entitled to conclude its remaining due diligence by reviewing and agreeing to the form of Loan documents, security interests, mortgage lien and assignment of APPA and CD, and all other documents it deems pertinent to the Loan and this Agreement. If requested, Diversified shall furnish to Lender copies of work plans, permits, approvals, title policies, abstracts or other information reasonably requested to facilitate due diligence.

B. **Amendment to the APPA:** Diversified, the Trustee, the Illinois Environmental Protection Agency, and the United States Environmental Protection Agency shall enter a mutually agreeable amendment to the APPA which simplifies and sets forth the final reconciliation between the Chemetco Trustee and Diversified, an agreed upon and simple formula for distribution of revenues from the sales of metal bearing materials at the Chemetco Site, and resolves any and all disputes under the APPA.

C. **CD Extension:** The extension of the CD is confirmed in writing by the United States Environmental Protection Agency ("EPA"), the United States Department of Justice and/or the U.S. District Court for the S.D. of Illinois, up to and including March 31, 2025.

D. **Notice:** Notice of this Agreement shall be given to the EPA and the Illinois Environmental Protection Agency, and any necessary approvals obtained from such agencies.

12362361.9

PAGE 4  
Chemetco Agreement  
December 21, 2018

E. **Bankruptcy Approvals:** The approval by: (i) Donald Samson (the "Chemetco Trustee") (the Trustee in the Chapter 7 Estate of Chemetco, Inc., pending in the United States Bankruptcy Court (the "Bankruptcy Court") for the Southern District of Illinois, Case No. BK 01-34066; and (ii) the Bankruptcy Court.

5. **Closing Date:** The Final Funding shall take place within seven (7) days of Bankruptcy Court approval of this Agreement and of all transactions contemplated by this Agreement which may require such Court's approval.

6. **Governing Law and Jurisdiction:** The Parties hereby agree that this Agreement and all documents entered into with regard to the Loan contemplated hereunder shall be interpreted and governed by the Bankruptcy Court and under the laws of the State of Illinois.

7. **Counterparts:** This Agreement may be executed in counterparts, all of which executed counterparts shall constitute a single document. Signature pages may be delivered via facsimile or electronic mail, attached to a single copy of this document, copies of which shall be delivered to each Party.

**LENDER:**

JOHN H. HARVISON

_____

**AGREED AND ACCEPTED:**

DIVERSIFIED MINERALS OF TEXAS, LLC

By: _____
Name: Elliott G. Stegin
Title: Chairman/Manager

**ACKNOWLEDGEMENT:**

The Estate of Chemetco, Inc., as a non-party, hereby acknowledges the terms of this Agreement.

**THE ESTATE OF CHEMETCO, INC.**

By: _____
Name: Donald M. Samson
Title: Trustee

12362361.9

Diversified Uses of Funds
And
Repayment Schedule
12/12/2018

## Investment Details

1st Loan Amount $1,200,000.00
2nd Loan Amount $1,800,000.00

Collateral: Land, Pile and Equipment

40% Equity In Diversified and 10% Return with first payment after 6 months.

| Uses of Initial Funds | | | |
|---|---|---|---|
| Plant Equipment & Construction | $660,000 | Construction | (2) Sag Mills- $400,000, Roller Mill- $50,000, Concentrator- $50,000, Installation- $160,000 |
| Bryan Cave- Legal | $150,000 | | |
| Gencorp- Contractor | $75,000 | | |
| Elliott | $200,000 | | |
| Reserve | $115,000 | | |
| | $1,200,000 | | |

| Uses Final Funds | | | |
|---|---|---|---|
| Plant Equipment & Construction | $475,000 | Construction- | Roller Mill- $50,000, Laboratory- $125,000, $300,000 |
| Bryan Cave- Legal | $100,000 | | |
| Reserve for Tailings | $886,000 | | |
| Estate | $80,000 | | |
| EPA | $109,000 | | |
| Site Improvements- Security, mobile shop, Water, | $100,000 | | |
| Gencorp- Contractor | $50,000 | | |
| | $1,800,000 | | |

## Dispursement and Repayment Schedule

| After First Advance. | First payment of $55,000 per month due after the plant is completed and will continue for 24 months until balance of $1,320,000 is paid. |
|---|---|
| After Final Advance. | First payment of $82,500 per month due after the plant is completed and will continue for 24 months thereafter until balance of $1,980,000 is paid. |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 28th day of December, 2018, a copy of the foregoing document, Application to Approve Agreement for Funding for Acquisition of Equipment and Harvesting of Metal Bearing Material from the Chemetco Site, was served upon the following electronically or by first class mail, postage prepaid:

SEE ATTACHED MAILING MATRIX

/s/ Tara Schaefer