**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In re: | ) | IN CHAPTER 7 PROCEEDINGS |
| | ) | |
| CHEMETCO INC., | ) | BK 01-34066 |
| | ) | |
| Debtor. | ) | |

**SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF SECOND MOTION**
**FOR ORDER HOLDING INNOVATIVE METALS & RECOVERY SYSTEMS, LLC AND**
**ABRAHAM REZEX IN CIVIL CONTEMPT**

On July 11, 2024, ECG Recycling, LLC ("ECG Recycling") and ECG Chemetco Claim

Holder, LLC ("ECG Claim Holder", and collectively with ECG Recycling, "ECG") filed its

second contempt motion now under consideration by the Court (Doc. # 2256). On August 6,

2024, in advance of the August 8 hearing date on the motion, ECG supplemented its position

(Doc # 2264).

The parties at the last status hearing agreed to stipulate to facts and admitted documents

to streamline the contempt hearing.  The stipulation of facts and admitted documents to which

ECG and the IMARS Parties ultimately have agreed does substantially address the factual

matters for the Court's consideration. But to fully appreciate the significance and magnitude of

the contempt that Rezex and IMARS has for this Court's orders and process, and to update the

Court on events since ECG filed its motion, ECG supplements the record modestly with

additional facts to which the IMARS Parties would not agree to stipulate, but which ECG

believes are readily established in the existing record and docket.

These additional facts reinforce that the records show that even after the agreed "final"

extensions of the time to close under the Fifth Extension Order and Sixth Extension Order, the

IMARS Parties continued to seek further time to close and made representations it could not

deliver on towards that goal, causing ECG to incur additional attorneys fees and expenses which would not have been incurred if the IMARS Parties had simply acknowledged that the transaction they had been promoting in various forms since the Spring of 2023 was not closing by the agreed final deadline.  Likewise, the IMARS Parties agreed to pay the per diem amount to ECG by a date certain without condition in an agreed order and then simply ignored that deadline, asserting despite the clear language they agreed to that the payment would not be paid until closing the settlement. The IMARS Parties should pay ECG for the damages ECG has suffered for these delays and reneges.

**I.      It remains unclear whether the IMARS Parties ever were a viable option for the Trustee**

The IMARS Parties have requested substantial indulgences from the Trustee, ECG and other parties, but have never fully reciprocated, and indeed have resisted providing details of its efforts, especially directly to ECG. When the Trustee initially filed motions seeking to terminate the Loan and Purchase Agreement in December 2023, to which ECG objected, ECG requested a continuance of the hearing set by the Trustee to permit adequate time for discovery.  The Trustee refused any extensions, claiming it was necessary that the motions be heard so that the transaction could close in January 2024.  Written discovery and depositions did ensue on an accelerated basis, but the IMARS Parties would not participate, did not produce any documents and did not make Rezex available for a deposition at the time scheduled in his deposition subpoena.  Since (and even well before), ECG continually asked for detailed information about Rezex and his financial arrangements, but it has been provided very little.

Nevertheless, based upon the Trustee's representations to ECG, the parties came to terms on a Settlement and Compromise, and then the extension requests began. Even though the EPA had approved the assignment of the Consent Decree to the IMARS Parties on March 1, 2024, the

Trustee's second request sought to extend a closing to March 26, 2024.  This was based on the Trustee's representations to the Court, based on information provided by the IMARS Parties, that led the Trustee to state, "Trustee is informed and believes that IMARS is ready, willing and able to close and complete all transactions necessary to Closing" (Doc. No. 2180 at ¶11).  ECG received the same assurances from IMARS, as indicated in a March 12, 2024 email from Kim Montecello, counsel for the IMARS Parties, to Bob Richards, counsel for ECG stating, "I sincerely believe that we will not need the entire extension" (ECF #2205, Objection of the ECG Parties to Trustee's Third Emergency Motion to Extend Closing Deadline at Ex. 1).

The Trustee has been steadfast in his support and belief in the IMARS Parties.  ECG has been far more dubious of how real the transaction and various financing sources promoted by the IMARS Parties were.  When the Trustee requested a third extension, presumably because of issues raised by the IMARS Parties' then funding source, NextBank, ECG raised a number of serious issues with the Trustee about NextBank, never receiving answers.  In particular, ECG questioned whether the Trustee had reviewed, was aware or, or had even asked for, appraisals, a standby letter of credit, a Revolving Credit and Security Agreement, financials of Rezex himself or IMARS, an analysis of NextBank International, an analysis of Drago Holdings LLC (the proposed borrower from NextBank), or otherwise was aware that NextBank's parent was delisted from the Nasdaq Stock Market in November 2023.  These issues are documented in ECF #2205, Objection of the ECG Parties to Trustee's Third Emergency Motion to Extend Closing Deadline at ¶¶16-17 and n. 3. It remains unclear whether the IMARS Parties provided the Trustee with all this detail or withheld it such that the Trustee relied, without substantiation, on the representations of the IMARS Parties.  But ECG has been consistently relying in good faith on the representations of the Trustee and its counsel and/or the IMARS Parties.

128035230

Apparently to appease ECG's ever-growing concerns, when the Trustee requested a fourth extension, he reported to the Court that "at the present time, the IMARS Parties have a firm financing commitment letter from a reasonably acceptable source which provides for a closing on Friday April 26, 2024 and funding on Tuesday, April 30, 2024", but the IMARS Parties had not provided the Trustee with such documentation, as the Trustee did not have a copy of the commitment letter and had not made it available to ECG, indeed representing to the Court that, "Trustee and his counsel are in the process of obtaining copies of such commitment letter for review" (ECF #2218 at ¶16).

Similarly, in his fifth request for extension, the Trustee again represented to this Court its confidence "that IMARS has funding in place that will close imminently; however, the lender informs Trustee that [sic] is not in a position to close by the Fourth Extended Closing Date", and requested a new extension until May 31, 2024 (ECF #2224 ¶¶16 and 18). It is evident now, that despite whatever representations the IMARS Parties were making to the Trustee, they did not have funding in place that would close imminently or the various proposed financing sources were not traditional recognized lending sources.

## II.    After the Definitive Fifth Extension, the Trustee and IMARS Parties continued working and the Court Orders have provided continuing obligations

At the hearing on the Fifth Emergency Motion, the Trustee's counsel indicated to the Court the parties had reached an agreement to extend the deadline to May 31, 2024

"with a provision that no further extensions will be granted beyond that time period. And when I say period, I mean, I'm putting a period at the end of that, so there aren't any exceptions like the other orders"

128035230

(Doc. #2243, Transcript of Evidentiary Hearing at 4:22-5:4). Rezex attended this hearing, and his presence was noted on the record (id. at 4:11-14).

Despite the Trustee's representations to the Court, and despite the language of the Court's fifth extension order that required ongoing obligations for the IMARS Parties even if the transaction did not close after the fifth extension, and requiring certain payments at the earlier or the Closing or a specified date, it is important for the Court to now recognize Rezex's subsequent testimony, at his June 26, 2024 deposition, that he did not pay the amounts owing to ECG until ECG's motion for contempt was filed, and he intended to only pay upon closing the transaction (ECF #2264-3, Rezex Dep. at 47:1-12) despite the clear language of the agreed order providing payment by a date certain without conditions. Moreover, it is also important to emphasize the IMARS Parties' own representations to this Court in their Motion to Reconsider the fifth extension request, in which they stated that they had "secured funding terms for bridge and permanent financing and [are] within weeks of funding this transaction" despite previously agreeing that the Fifth Extension to May 31, 2024 would be the final extension (ECF #2240 and at ¶12).

Failing to close by May 31, 2024, Rezex testified, and was adamant that he would still close the transaction, but indicated that the transaction did not close the week after May 31, 2024 because of international wire transfer difficulties (see ECF #2264-3, Rezex Dep. 37:14-38:16). Rezex testified that the IMARS Parties' funding source now was apparently not NextBank, but Denis Ivosevic, described as a former European soccer player, but this funding arrangement involved utilizing a Charles Schwab account that was not opened until two to three weeks before Rezex June 24, 2024 deposition (and thus after May 31, 2024), and the wire transfer was supposed to have been made on June 6, 2024, again after the lapse of the May 31, 2024 deadline

128035230

(id.). The IMARS Parties apparently were also working with a backup funding source identified as Jared Walther and an entity identified as ECT (id. at 32:1-8). The timing is significant because it readily establishes that the IMARS Parties, in seeking Reconsideration of the fifth extension, were still not really ready to proceed even after the time period for which they were seeking yet another extension.

Importantly, Rezex further testified that he was willing to make interest payments to ECG for June 2024 regardless of whether he ever closed the transaction but that he was not willing to do so prior to closing (ECF#2264-3, Rezex Dep. at 48:4-12).

Based upon the representations of the IMARS Parties that the transaction would close as soon as the wire transfer issues were resolved, the parties negotiated a Sixth Extension of the closing, through July 9, 2024. Nevertheless, on July 8, 2024, the Trustee reported to ECG that the IMARS Parties would not close with Ivosevic as the funding source, but was now working with Jared Walther, who was conducting due diligence and needed 60 days to close.

Despite the emphatic language of Trustee's counsel and the fifth extension order, the Trustee and the IMARS Parties continued to represent to the other parties involved that the IMARS Parties were still working to close the transaction. For instance, the Trustee's counsel forwarded news to ECG on July 25, 2024, that Walther stated, "everything looks good for paperwork, will be receiving the ledger statement Friday afternoon or Saturday morning" (July 26 or 27). A true and accurate copy of the Trustee's email to ECG, indicating Walther's comments to the IMARS Parties, their counsel and the Trustee's counsel, is attached to the Declaration of Robert E. Richards as Ex. 1. The Trustee' counsel again informed ECG on July 26, 2024, that, per the IMARS Parties' lender, "[t]he bankers are in the process of putting the deposits on the books." A true and accurate copy of the Trustee's email to ECG, indicating

128035230

Walther's comments to the IMARS Parties, their counsel and the Trustee's counsel, is attached to the Richards Declaration as Ex. 2. The Trustee's counsel reported to ECG on July 29, 2024, that the IMARS Parties' lender planned to fund into his lawyers' trust account, and the lender reported to the Trustee, and the IMARS Parties and their counsel that the lender was "expecting the wire confirmation in the lawyers letter today" (July 29, 2024).  A true and accurate copy of the Trustee's email to ECG, indicating Walther's comments to the IMARS Parties, their counsel and the Trustee's counsel, is attached to the Richards Declaration as Ex. 3. The Trustee's counsel reported to ECG on July 31 that the IMARS Parties' counsel, Spencer Desai, confirmed on July 31, 2024, that the estate's payroll "has been funded."  A true and accurate copy of the Trustee's email to ECG is attached to the Richards Declaration as Ex. 4. On August 5, 2024, the Trustee's counsel reported in a telephone call with counsel for ECG that counsel for the IMARS Parties, Spencer Desai, and the IMARS Parties' lender, Jared Walther, reported in an August 1, 2024 telephone call with counsel for the Trustee that they were aiming to close on Wednesday, August 7, 2024, but that the Trustee's counsel had not seen evidence of funding yet.  Declaration of Robert E. Richards at ¶6.

With nothing still resolved, and without any information of what the Trustee and the IMARS Parties were then intending, ECG's counsel conducted a meet-and-confer session with counsel for the IMARS Parties on August 7, 2024.  Counsel Spencer Desai confirmed that a per diem payment would not be paid prior to this Court's August 8, 2024, status conference and would only be paid at closing, and that a closing could be anytime now but that Desai had not seen funding or set a firm closing date. *Id*. at ¶7.  ECG's counsel and counsel for the IMARS Parties had a follow-up meet-and-confer telephone conference on August 21, 2024, but nothing was resolved. *Id.* at ¶8. On August 29, 2024, Desai indicated that he still "was waiting to hear

back from [his] client" and requested a conference call on August 30, 2024. A true and accurate copy of Desai's August 29, 2024, email to O'Brien is attached to the Richards Declaration as Ex. 5. On August 30, 2024, ECG's counsel and counsel for the IMARS Parties again conducted a telephone conference regarding the pending contempt motion. The parties did not reach any agreement to resolve the matter and counsel for the IMARS Parties took the position that, without ECG's consent, any transaction involving the IMARS Parties could no longer close, and thus no per diem amounts were due and owing to ECG after July 10, 2024. *Id*. at ¶9. Until that point in time, ECG was led to believe that the IMARS Parties and the Trustee were still working to complete a transaction to effectuate the Compromise and Settlement. ECG has received no information since that time whether or not the IMARS Parties are still working to close a transaction and working with potential financing sources for a transaction or whether the Trustee and the IMARS Parties have stopped all efforts.

### III.    Amounts Sought by ECG

As a result of the contempt of the IMARS Parties, ECG now seeks

- $250,000 through July 10, 2024, per the Sixth Extension Order,

- $290,000 ($10,000 per diem from July 10, 2024 through the August 8, 2024, when the motion was set for hearing), plus

- $220,000 ($10,000 per diem from August 9, 2024 through August 30, 2024, when the IMARS Parties first acknowledged from their perspective that their efforts going forward were at an end without ECG's consent, plus

- $188,742.60 legal fees, from May 14, 2024 (the ruling on ECG's initial motion for contempt) through preparations for this hearing in October 2024, plus

- $3,000 out of pocket expenses incurred by Trey Wainwright in anticipation of the August 8 hearing on the second motion for contempt,

for a total of **$951,742.60**.

Even if the Court does not accept applying a per diem after the sixth extension order, certainly something more than the $250,000 the IMARS Parties were previously required to pay and are refusing to pay should be in order, including the attorneys' fees and expenses ECG has continued to incur since it pursued the motion. That alone amounts to **$441,742.60**. But the IMARS Parties' conduct has been so defiant of the Court's orders, and so persistent throughout their involvement in this matter, that the full amount requested is certainly justified.

## CONCLUSION

Based on its initial motion, as supplemented here and based on the stipulation of facts and admitted documents of ECG and the IMARS Parties, ECG respectfully requests that the Court grant its Second Motion for Order Holding Innovative Metals & Recovery Systems, LLC and Abraham Rezex in Civil Contempt and award the relief requested herein.

Dated: October 7, 2024                    Respectfully submitted,

*/s/ Stephen J. O'Brien*
Stephen J. O'Brien, #6319974
Dentons US LLP
Hanley Corporate Tower
101 S. Hanley, Suite 600
St. Louis, MO 63105 (314) 241-1800
stephen.obrien@dentons.com

Robert E. Richards (*Admitted Pro Hac Vice*)
Dentons US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8000
robert.richards@dentons.com

*Attorneys for ECG Recycling, LLC and ECG Chemetco Claim Holder LLC*

128035230

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 7th, 2024, the foregoing SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OOF SECOND MOTION FOR ORDER HOLDING INNOVATIVE METALS & RECOVERY SYSTEMS, LLC AND ABRAHAM REZEX IN CIVIL CONTEMPT was electronically filed with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to all counsel of record.

*/s/  Stephen J. O'Brien* _____

128035230